BANK OF COMMERCE *v.* HUDDLESTON.

Opinion delivered February 28, 1927.

1. MUNICIPAL CORPORATIONS—CREATION OF IMPROVEMENT DISTRICTS.—Improvement districts may be created in a city or town for the purpose of constructing waterworks and electric lights, and such districts may embrace the entire area of the city or town.

2. MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—MUNICIPAL AID.—Where an improvement district embracing the entire area of a city is created for the purpose of constructing waterworks and an electric light system, such districts are not "private enterprises," within Const., art 12, § 5, prohibiting cities and towns from loaning their money or credit in aid of private enterprises.

3. MUNICIPAL CORPORATIONS—AIDING PUBLIC IMPROVEMENT.—Where an improvement district was created, under Sp. Laws 1911, p. 375, for construction of waterworks and electric lights, and the amount realized from bonds authorized by such act was insufficient, the issuance of warrants by the city to complete the construction *held* not to violate art. 12, §. 5, of the Constitution, prohibiting the use of public money for private enterprises.

4. MUNICIPAL CORPORATIONS.—Power to construct water and light systems for municipal and domestic purposes may be conferred by the Legislature on municipalities, as was done by Crawford & Moses' Dig., §§ 7564-5.

5. MUNICIPAL CORPORATIONS—CONDUCT OF WATER AND LIGHT BUSINESS. —As incident to the power to construct and maintain waterworks and a light system, a city or town may carry on the various businesses in which such public utilities are usually engaged, and may create a debt for that purpose.

6. MUNICIPAL CORPORATIONS—IMPROVEMENT DISTRICT.—The erection and maintenance of a system of waterworks and electric lights constitute a public improvement which may be constructed by local assessments on real property specially benefited.

7. MUNICIPAL CORPORATIONS—CONTRIBUTION TO PUBLIC IMPROVEMENT. —Where the general public shares to a greater or less extent in the benefits of a system of waterworks and electric lights, a city or town may contribute money to aid in the construction of such improvement, without violating the prohibition of Const., art. 16, § 1, against loaning its credit for any purpose whatever.

8. MUNICIPAL CORPORATION—ILLEGAL WARRANTS—ESTOPPEL.—Where a municipal corporation issued its warrants in aid of a public improvement and thereby received the benefit of the completion of such improvement, it will be estopped to assert that the warrants were illegally issued, because the yeas and nays were not called and recorded.

9. MUNICIPAL CORPORATIONS—INTEREST ON WARRANTS.—Where a city issued warrants to complete the construction of waterworks and an electric light system after the proceeds from the sale of bonds, authorized under Special Laws 1911, p. 395, § 39, were found to be insufficient, the holder of such warrants could not collect interest on same, in view of Const., art. 16, § 1, forbidding the issuance by cities and towns of interest-bearing evidences of indebtedness.

Appeal from Desha Chancery Court; *E. G. Hammock*, Chancellor; reversed.

### STATEMENT OF FACTS.

Ed Huddleston and others, owners of real property in the city of McGehee, brought this suit in equity against the city of McGehee and the officers thereof, the Bank of Commerce of the city of McGehee, and the McGehee Water and Light District, to enjoin the defendants from collecting any taxes from inhabitants of the city of McGehee to apply towards the payment of certain city warrants which were issued for the purpose of paying, in part, the cost of water and light plants which were constructed by the commissioners of an improvement district created for that purpose.

The suit was defended on the ground that the warrants were legally issued and that the Bank of Commerce is a *bona fide* owner thereof for value.

The facts, so far as they are necessary for a determination of the issues raised by the appeal, may be briefly stated as follows:

The Legislature of 1911 passed a special act to create an improvement district within the corporate limits of the town of McGehee for the purpose of providing, constructing and maintaining a system of waterworks and electric lights for the town of McGehee. Acts 1911, p. 375. Section 1 provides that all real property within the corporate limits of the town of McGehee, Desha County, Arkansas, be created into an improvement district to be known as the McGehee Water and Light District. Section 12 provides that the board of commissioners be authorized to maintain and operate the plant after completion. The section further provides, first, for the payment of the indebtedness of the district, and then that the surplus shall be paid to the treasurer of the town of McGehee to be used and expended by it as any other of its revenues. Section 18 provides for the payment of the assessment of benefits in annual installments, and contains a proviso that no improvement shall be undertaken under the act which shall exceed in cost twenty per cent. of the value of the real property in such district, as shown by the last county assessment. Section 33 provides for additional assessments, if necessary, and also contains a proviso that the sum of all assessments levied by the board from year to year shall not exceed twenty per cent. of the value of the real property of the district. Section 39 provides that, for the purpose of constructing and maintaining a system of waterworks and electric lights, the board of commissioners may issue bonds not exceeding the sum of $30,000.

The board of commissioners issued bonds to the amount of $30,000 for the purpose of constructing a system of waterworks and electric lights, as provided by the act. It was ascertained that this sum of money was not

sufficient to carry out the purpose of the act. The city council of the town of McGehee then issued city warrants in the sum of $16,520 for the purpose of paying the McGehee Valley Bank the money which it advanced for the purpose of completing the water and light system. This was on March 31, 1913. The yeas and nays were not called when the vote on the resolution adopted by the city council authorizing the issuance of these warrants was passed. Warrants were reissued from time to time for the face value of the original warrants and the accumulated interest. It is stipulated that the amount of warrants now held, principal and interest, is $28,700, and all the warrants are dated January 2, 1922. The McGehee Valley Bank became insolvent, and its assets were taken over by the Bank of Commerce of McGehee, which was organized for that purpose. At various times the city paid toward liquidation of these warrants the sum of $5,500, and there remains due and unpaid the sum of $11,020 as the principal of said warrants. The balance of the $28,700 is for the accumulated interest.

The chancellor was of the opinion that the act of the city of McGehee in issuing said warrants, under the circumstances above stated, was *ultra vires,* and therefore void. A permanent injunction was issued in favor of the plaintiffs against the defendants, under the terms of which the Bank of Commerce was directed to file the warrants with the clerk of the chancery court to be canceled, and said bank was permanently enjoined from collecting any part of the indebtedness evidenced by said warrants. It was also decreed that the city of McGehee and the board of commissioners of the McGehee Water and Light District be permanently enjoined from paying any portion of the indebtedness evidenced by said warrants. To reverse that decree the Bank of Commerce of McGehee has duly prosecuted an appeal to this court.

*E. E. Hopson* and *Robinson, House & Moses,* for appellant.

*Williamson & Williamson,* for appellee.

HART, C. J., (after stating the facts).  As we have already seen, by special act of the Legislature, an improvement district comprising the whole of the territory of the town of McGehee was created by the Legislature of 1911, for the purpose of constructing and maintaining a system of waterworks and electric lights for said town.  For the purpose of constructing the improvement the commissioners of the district were authorized to issue bonds not to exceed $30,000.  It was found that the commissioners could not complete the improvement for that amount, and McGehee, which had become a city of the second class in 1913, issued city warrants in the sum of $16,520 for the purpose of completing the improvement.  The McGehee Valley Bank advanced the money and the warrants were turned over to it.  The Bank of Commerce succeeded to the assets of the McGehee Valley Bank and became the owner of the warrants.

It is sought to uphold the decree holding the warrants to be invalid, on the ground that their issuance was in violation of the provisions of art. 12, § 5, of our Constitution, which reads as follows:  "No county, city, town or other municipal corporation shall become a stockholder in any company, association or corporation, or obtain or appropriate money for, or loan its credit to, any corporation, association, institution or individual."

Under this section of our Constitution, public money or the public revenue cannot be used or pledged in aid of private enterprises.  In no case originated by individuals, whether associated or not, or by private corporations with a view to gain, can municipal corporations participate in such manner as to incur pecuniary expense or liability.  Municipal corporations may not become stockholders or furnish money or credit for the benefit of private enterprises.  The object of the provision in the Constitution was to prevent municipal corporations from engaging in enterprises foreign to the purpose for which they were organized and assuming liabilities not within the compass of the usual and necessary powers of cities and towns.  The question of the power of municipal cor-

porations to subscribe for or to loan its credit in the form of bonds in aid of railroad companies had been the subject of much litigation in other States, and the framers of the Constitution enacted the section in question for the purpose of settling the question. *Russell* v. *Tate,* 52 Ark. 541, 13 S. W. 130; *Newport* v. *Railway Co.,* 58 Ark. 270, 24 S. W. 427; and *Luxora* v. *J. L. C. & E. Rd. Co.,* 83 Ark. 275, 103 S. W. 605.

In this State, improvement districts may be created in a city or town for the purpose of constructing waterworks and electric lights, and such districts may embrace the entire area of the city or town. *Crane* v. *Siloam Springs,* 67 Ark 30, 55 S. W. 955; and *Wilson* v. *Blanks,* 95 Ark. 496, 130 S. W. 517. The cost of the improvement is obtained by means of special assessments levied upon the real property within the limit of the district, and the commissioners thereof are charged with a public duty; and such districts are in no sense private enterprises. In *McDonnell* v. *Imp. Dist. No. 145 Little Rock,* 97 Ark. 334, 133 S. W. 1126, under a statute providing that no single improvement shall be undertaken which alone will exceed in cost twenty per cent. of the value of the real property in such district, it was held that the regulation was intended only to apply to the amount which could be assessed against the real property in the district and was not intended to limit the total cost of the improvement, where contributions from the city and county reduce the cost of the improvement within the specified percentage of the valuation of the realty within the district. It is evident that this holding would not have been made by the court if it had considered that the contribution made by the city or county contravened the clause of our Constitution above referred to. If the contribution, under the circumstances, had been a violation of the Constitution, it would have been illegal, and it could not have had the effect of reducing the cost of the improvement within the limits provided by the statute. If such a contribution could be made directly by an appropriation of money, it could be made by the issuance

of warrants, which would be nothing more than a direction to the city treasurer to pay the amount of money specified in the warrants to the holder thereof. Therefore we are of the opinion that the issuance of the warrants in question was not in violation of art. 12, § 5, of our Constitution.

It is next contended that their issuance was in violation of art. 16, § 1, of our Constitution, which reads as follows: "Neither the State nor city, county, town or other municipality in this State shall ever loan its credit for any purpose whatever; nor shall any county, city, town or municipality ever issue any interest-bearing evidences of indebtedness, except such bonds as may be authorized by law to provide for and secure the payment of the present existing indebtedness, and the State shall never issue any interest-bearing treasury warrants or scrip."

We do not agree with counsel in this contention. As we have already seen, cities and towns may be organized under our statute for the purpose of constructing a system of waterworks and electric lights, and the whole area of the city or town may be embraced within the boundaries of such district.

Again, it is well settled that a system of waterworks and electric lights may be constructed by cities and towns themselves and paid for by general taxes. The power of constructing waterworks and lighting the streets and other public places of cities and towns by electricity is conferred by statute. Crawford & Moses' Digest, §§ 7564-7565. Water and light are essential to the welfare of a city or compactly settled municipality. Therefore the power to construct and maintain a system of waterworks and electric lights for municipal and domestic purposes may be conferred by the Legislature upon such municipalities. 2 Dillon on Municipal Corporations, 5th ed., § 1296; and 4 McQuillin on Municipal Corporations, §§ 1781-85.

The general purpose of conferring upon municipal corporations power of the legislative and administrative

functions of the State was to enable them to provide for water, light and other conveniences necessary to the health and comfort of the inhabitants; and, as an incident to the power conferred, the municipalities themselves may carry on the various businesses in which such public utilities are usually engaged. When the city is authorized to construct waterworks and electric lights, it may necessarily create a debt for that purpose. Such a use of the corporate credit is for a public purpose, and is not the loan of the credit of the municipality.

There is nothing in the transaction in question which contravenes art. 16, § 1, of the Constitution. The city of McGehee, in effect, expended the amount of money evidenced by the warrants issued by it to help build a system of waterworks and electric lights, which were being constructed under an improvement district legally organized under the statute. The city did not thereby loan its credit or become security, directly or indirectly, for any person or corporation, or for any purpose. It simply stipulated that it would pay a certain part of the cost of construction of a system of waterworks and electric lights, which were being constructed by a public agency and not by a private corporation or association of individuals. The issuance of the warrants was for a public purpose, and not in aid of any private enterprise. The city did not loan its credit for any purpose, within the meaning of the Constitution. It merely contributed a part of its public revenue for a public purpose. It will be noted that the statute in question provides that the system of waterworks and electric lights may ultimately become the absolute property of the city. The statute directs that the revenues derived from supplying water and light to the inhabitants of the city shall first be appropriated to the payment of the cost of constructing and maintaining the system. A sinking fund is provided, and the unexpended revenue derived from the operation of the waterworks and electric lights is then placed in the city treasury, to be expended in the same manner as the general revenue of the city.

In *Town of Klamath Falls* v. *Sachs*, 35 Ore. 325, 57 Pac. 329, the Supreme Court of Oregon held that, under a statute authorizing a municipal corporation to furnish itself with a water system, it may enter into an executory contract looking to the acquirement of a water system, even though it does not become the present absolute owner.

The principle was also recognized in *Forrest City* v. *Bank of Forrest City,* 116 Ark. 377, 172 S. W. 1148, in which it was held that a municipal corporation has the right to borrow money to purchase necessary machinery for constructing and taking care of its water supply, and to pay the cost of moving its pumping station, and will be liable to the lender on notes given for the money so borrowed.

The erection and maintenance of a system of water-works and electric lights constitute a public improvement which may be constructed by local assessments on the real property specially benefited. It may also happen that the general public shares to a greater or less extent in the benefits, and, when that happens, the city may contribute towards the construction of the improvement. *McDonnell* v. *Imp. Dist. No. 145, Little Rock,* 97 Ark. 334, 133 S. W. 1126; *Dean* v. *Moore,* 112 Ark. 254, 165 S. W. 639; and *Mullins* v. *City of Little Rock,* 131 Ark. 59, 198 S. W. 262. These cases hold that public funds of a city may be contributed by the city in order to complete a public improvement which has been constructed in part by the commissioners of an improvement district. This is practically what was done in the case at bar, and we are of the opinion that the transaction, when considered according to its substance, does not contravene art. 16, § 1, of our Constitution.

It is next insisted that the resolution authorizing the issuance of the warrants was not passed in the manner prescribed by the statute, because the yeas and nays were not called and recorded. As we have already seen, it was within the power of the municipality to issue the warrants and to receive the benefits of the transaction

in the completion of the public improvement. Under these circumstances it is estopped from asserting that the warrants were not legally issued. *Forrest City* v. *Orgill,* 87 Ark. 389; and *Natural Gas & Fuel Co.* v. *Norphlet Gas & Fuel Co.,* 173 Ark.——, and cases cited.

It is next contended that, in any event, the collection of interest on the warrants cannot be had. In this contention we think counsel are correct. Article 16, § 1, of the Constitution in plain language provides that no county, city or municipality shall ever issue any interest-bearing evidences of indebtedness except in certain cases, which do not affect the case at bar. In the consideration of this provision of the Constitution, in *Forrest City* v. *Bank of Forrest City,* 116 Ark. 377, 172 S. W. 1148, it was held that, where a municipal corporation borrowed money for a purpose authorized by statute, and gave an interest-bearing note therefor, the provision in the note calling for the payment of interest is in excess of the authority of the city council, and may be regarded as surplusage. See also *Gould* v. *Davis,* 133 Ark. 90, 202 S. W. 37, and cases cited.

The result of our views is that the holder of the city warrants in question is not entitled to collect interest on the warrants, but is entitled to the face value of the warrants themselves, which the evidence shows to be $11,020. It follows that the decree will be reversed, and the cause will be remanded with directions to the chancery court to enter a decree in accordance with this opinion, and for further proceedings in accordance with the principles of equity.